# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) TARRANT REGIONAL WATER DISTRICT, a Texas State Agency,<br><br>Plaintiff,<br><br>v.<br><br>(1) RUDOLF JOHN HERRMANN,<br>(2) JESS MARK NICHOLS,<br>(3) BILL SECREST,<br>(4) FORD DRUMMOND,<br>(5) LONNIE FARMER,<br>(6) ED FITE,<br>(7) JACK W. KEELEY,<br>(8) KENNETH K. KNOWLES, and<br>(9) RICHARD SEVENOAKS, In Their Official Capacities as Members of the Oklahoma Water Resources Board ("OWRB") and the Oklahoma Water Conservation Storage Commission,<br><br>Defendants. | Case No. CIV-07-_____ |

## COMPLAINT

Plaintiff Tarrant Regional Water District ("Plaintiff" or "TRWD") brings this action for declaratory and injunctive relief to enforce its right to appropriate, transfer and export stream water in Oklahoma pursuant to the Red River Compact, and the Supremacy and Commerce Clauses of the U.S. Constitution.

## INTRODUCTORY ALLEGATIONS

1. Plaintiff supplies public water to more than 1.6 million people in the North Central Texas area, including citizens of Fort Worth, Texas. Oklahoma has declared and

implemented a public policy to forbid nonresidents from acquiring water located in Oklahoma. This unlawful public policy to embargo Oklahoma water is embodied in a variety of statutes, and in Oklahoma Attorney General Opinion No. 77-274 (the "Anti-Export Laws"), which bind the Oklahoma Water Resources Board, the Oklahoma administrative agency responsible for regulatory supervision over appropriation, sale, and use of water located in Oklahoma. Oklahoma's Anti-Export Laws violate the Red River Compact and unlawfully discriminate against interstate commerce in violation of the Commerce Clause. Plaintiff seeks declaratory and injunctive relief against the embargo, and a restraining order to prevent reliance on the Anti-Export Laws as a basis for adverse administrative action against Plaintiff, threatening irreparable injury to Plaintiff's priority rights, until the Court has the opportunity to determine Plaintiff's claims herein.

## PARTIES

2.     Plaintiff TRWD is a Texas governmental agency. Vernon's Ann.Texas Const. Art. 16, § 59(b); Tex. Water Code § 51.001 et seq. Plaintiff is one of the largest raw water suppliers in the state of Texas, providing water to more than 1.6 million people in the North Central Texas area, including the cities of Fort Worth, Arlington, and Mansfield, and the Trinity River Authority which is itself a state agency providing water and waste water services in 17 Texas counties within the Trinity River Basin.

3.     Defendants are Rudolf John Herrmann, Jess Mark Nichols, Bill Secrest, Ford Drummond, Lonnie Farmer, Ed Fite, Jack W. Keeley, Kenneth K. Knowles, and Richard Sevenoaks. Defendants are the nine members of the Oklahoma Water Resources Board ("OWRB"), which is the Oklahoma agency responsible for enforcing Oklahoma

laws which regulate the appropriation, sale, and use of Oklahoma surface water and groundwater. The OWRB is created pursuant to 82 O.S. (2006 Supp.), §1085.1 and its broad functions are set forth in 82 O.S. (2006 Supp.), §1085.2. Defendants are *ex officio* also the members of the Oklahoma Water Conservation Storage Commission, created by 82 O.S. 2001, §1085.18, and thus subject to statutory duties some of which are challenged as unconstitutional herein. The individual Defendants (who have no choice but to follow Oklahoma's unconstitutional Anti-Export Laws) are acting under color of state law and are sued herein only in their official capacities, not in their individual capacities.

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to both 28 U.S.C. '1331 and §1332. See also 82 O.S. 2001, §1431 (Section 13.03 of Red River Compact, approved by Congress, Pub. L. No. 96-564, 94 Stat. 3305, December 22, 1980), which confers original jurisdiction on federal district courts.

5. Plaintiff brings this action to determine and enforce its rights under the Red River Compact (September 19, 1979); the Supremacy Clause of the United States Constitution (Art. 6, Parag. 2); and the Commerce Clause of the United States Constitution (Art. 1, Section 8, Clause 3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and equitable relief pursuant to 28 U.S.C. §2202 and Fed.R.Civ.P. 65.

6. Plaintiff is a citizen of the State of Texas and Defendants are citizens of the State of Oklahoma, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

**VENUE**

7.     Defendants are sued in their official capacities as members of the OWRB, a state agency with its public office in this judicial district.  Venue is proper in the Western District of Oklahoma, which is the judicial district within which the Defendants, the members of OWRB's board of directors, perform their official duties.  28 U.S.C. '1391(b).  Venue is also proper pursuant to Section 13.03 of the Red River Compact, since this action requires application and construction of that Compact.  82 O.S. 2001, §1431 (Section 13.03).

**GENERAL FACTUAL BACKGROUND**

**Oklahoma's Abundance of Water**

8.     Oklahoma has an abundance of surface water.  OWRB reports that the approximate total allocated stream water use in Oklahoma is 2.6 million acre feet per year, only about 7.6% of the estimated 34 million acre-feet of unused water flowing *out* of the state each year through Oklahoma's two major river basins, the Red River and Arkansas River.

9.     Oklahoma has no basis upon which to predict, and has not predicted that it will suffer any water shortage in the near or even distant future.  Indeed the OWRB has repeatedly affirmed that Oklahoma has more than sufficient resources to meet its need. Further, the Oklahoma Legislature's edicts for a study by a Joint Committee on Water Planning (82 O.S. (2006 Supp.), §1B(A)) to determine conservation and preservation needs were never implemented; the committee was never organized, never met, and neither performed nor reported conclusions on the work directed.  Oklahoma's embargo

of it water resources, alleged more particularly below, have an unconstitutional economic protectionist purpose of preventing the exportation of Oklahoma water to Texas.

**Projected Water Shortage in Communities Served by Plaintiff**

10.     The Texas communities served by Plaintiff face a long-range water shortage if additional water sources are not acquired.  Plaintiff has conducted a comprehensive long range utility plan to assess the water demands for the communities it serves through the year 2060, by which time its population base is expected to more than double.  Plaintiff has reviewed all census and local planning jurisdiction databases to determine expected demands, and has investigated the yield of all of its water resources and water projects.  The result of this comprehensive study shows that the water demands of the Texas communities served by Plaintiff will exceed projected water supplies .  By the year 2060 the deficiency will be about 400,000 acre feet per year.

11.     Plaintiff has also studied the feasibility of potential sources of water, and has specifically identified acquisition of water within Oklahoma as the most practical and recommended water resource to meet a substantial portion of the needs of the areas served by Plaintiff.

**The Waste of Vast Quantities of Oklahoma Water**

12.     The quantity of  water which Plaintiff seeks to appropriate within Oklahoma, to meet annual long-range needs of the Texas communities, is a small fraction of the amount of water which is annually discharged from the watercourses located in Oklahoma  from which Plaintiff wishes to appropriate. This water is discharged, unused, into the Red River, where its water quality is degraded to a degree making it

economically infeasible to be diverted and treated to meet potable water standards. This water flows to the Gulf of Mexico where it is lost to beneficial use.

13.   After commencement of this action Plaintiff will file applications with OWRB for appropriations from three  water courses located in southern Oklahoma seeking a cumulative total of 460,000 acre feet per year which, even if granted, will constitute only about $1/9^{th}$ of the remaining available water (about 4,000,000 acre feet per year) that will otherwise be discharged in the Gulf of Mexico and lost to beneficial use – i.e., Oklahoma will still be annually wasting about eight times the quantity of water Plaintiff has appropriated from those streams.

## **THE RED RIVER COMPACT**

14.   The Red River Compact ("Compact") among the States of Arkansas, Louisiana, Oklahoma, and  Texas, is approved by Congress pursuant to Art. I, Section 10, Cl. 3, U.S. Constitution (Pub. L. No. 96-564, 94 Stat. 3305, December 22, 1980).  Under the Compact, Texas is apportioned certain stream water, including without limitation waters within Oklahoma that Plaintiff seeks to appropriate.  The Compact delineates conditions under which and quantities for which Texas has an equal right of access and use, notwithstanding that the water is located in Oklahoma.  Diversions at these points constitute "mainstem" diversions under the Compact -- *i.e.,* they are treated as if the water was taken from the Red River itself.

## OKLAHOMA'S UNCONSTITUTIONAL PUBLIC POLICY AND LAWS FORBIDDING EXPORT OF WATER

15. Oklahoma has declared a public policy to embargo water which is located within Oklahoma, preventing citizens of other states from acquiring rights to such water. Oklahoma's public policy is expressly and implicitly incorporated into its laws, reflected in an Opinion of its Attorney General, and imposed upon the Defendants who are charged with implementing Oklahoma's laws relating to water resources, and who are required to follow an Oklahoma Attorney General Opinion that has not been superseded by judicial authority.

16. The Oklahoma Legislature has expressly declared Oklahoma's public policy to prevent nonresidents from acquiring water from Oklahoma. 82 O.S. 2001, §1086.1(A)(3) states:

> Water use within Oklahoma should be developed to the maximum extent feasible for the benefit of Oklahoma so that out-of-state downstream users will not acquire vested rights therein to the detriment of the citizens of this state; ….

Oklahoma's public policy is similarly reflected in 1977 Okla. Session Laws 1005, S.J. Res. No. 7, declaring -- contrary to governing constitutional doctrine -- that Oklahoma possessed "legal title" to unappropriated water which would otherwise flow out of the state (*i.e.,* "it is possible that by continuing to allow water to flow out of state, Oklahoma's legal title to such water might become questionable"), and that Oklahoma asserted a "prior right for the State of Oklahoma" over "the usused and uncontrolled water flowing from the state" in a quantity about four times the amount which it has even

7

*currently* appropriated to beneficial uses, or such other amount that Oklahoma might determine it needed to develop a "comprehensive water plan" under OWRB's auspices.

17.  The Oklahoma Attorney General, relying on S.J. Res. No. 7, quoted above, *inter alia,* issued Opinion No. 77-274 on February 28, 1978 to OWRB's then-acting Executive Director, concluding that Oklahoma law would not countenance an appropriation of water located in Oklahoma by an out-of-state user:

> Considering these factors together, we consider the proposition unrealistic that an out-of-state user is a proper permit applicant before the Oklahoma Water Resources Board. We can find no intention to create the possibility that such a valuable resource as water may become bound, without compensation, to use by an out-of-state user.

Attorney General Opinion No. 77-274 has not been judicially declared invalid or addressed. Under Oklahoma law, Defendants acting in their official capacities as the governing ard members of OWRB are required to follow an Attorney General Opinion until a court determines otherwise. *Hendrick v. Walters,* 865 P.2d 1232, 1243 (Okla. 1993). Further, Defendants, in their official capacities, as the governing members of OWRB, are powerless to strike down any of Oklahoma's laws for constitutional repugnancy. *Dow Jones & Co., Inc. v. State ex rel. Oklahoma Tax Com'n,* 787 P.2d 843, 845 (Okla. 1990).

18.   Oklahoma's public policy of forbidding acquisition by a nonresident of water in Oklahoma permeates Oklahoma's Anti-Export Laws, which include the following:

a) 82 O.S. (2006 Supp.), §1B and 74 O.S. (2006 Supp.), §1221.A -- a "moratorium" on the sale or exportation of surface water and/or groundwater outside Oklahoma, whether by contract, state or tribal compact, intergovernmental cooperative agreement, *or exportation by any means* -- effective initially for three years from June 6, 2002, then later extended for five years from November 1, 2004. The legislature has expressly excepted from the Moratorium on water exports industry-related sales of Oklahoma water -- *i.e.,* sales which promote Oklahoma's own commerce. 82 O.S. (2006 Supp.), §1B(C)(2).

b) 82 O.S. 2001, §105.16(B) -- which discriminatorily provides for surface water appropriations exceeding seven years only upon a showing that the proposed use will promote the optimal beneficial use of water "in Oklahoma," thereby preventing appropriation of surface water for a complicated out-of-state use involving lengthy development periods such as meeting municipal long-term needs.

c) 82 O.S. (2006 Supp.), §1085.2(2) -- which forbids the OWRB (governed by Defendants) from making any contract to convey title or use of water outside the State, including to any other state or governmental subdivision of any other state, except by an authorizing act of the Legislature.

d) 82 O.S. 2001, §1085.22 -- which forbids the Oklahoma Water Conservation Storage Commission (whose *ex officio* members are the members of OWRB, Defendants herein), from permitting the sale or resale of any water for use outside Oklahoma, in conjunction with duties imposed upon such Commission relating to the sale, transfer or lease of water storage facilities.

e) 82 O.S. 2001, §1266(9) -- by definition excluding participation of non-Oklahoma political subdivisions in a Regional Water Distribution District under 82 O.S. 2001, §1266 et al., thus depriving such non-Oklahoma political subdivisions of the opportunity and right accorded to Oklahoma subdivisions to, *inter alia,* the acquisition of water rights, and the furnishing, transportation and delivery of water, under 82 O.S. 2001, §1267.

f) 82 O.S. 2001, §1324.10(B) -- which forbids the sale or exportation of water by a water district outside Oklahoma without the consent of the Legislature.

19. Oklahoma's Anti-Export Laws, which constitute an embargo of Oklahoma water preventing the acquisition of such water by nonresident persons or entities, public and private, violate the Red River Compact and additionally have the protectionist

9

purpose and effect of discriminating against interstate commerce in violation of the Commerce Clause.

### Oklahoma's Anti-Export Laws Are Unconstitutionally Obstructing Plaintiff's Appropriations Of Water in Oklahoma

20. The Oklahoma Moratorium (82 O.S. (2006 Supp.), §1B and 74 O.S. (2006 Supp.), §1221.A) constitutes an unlawful embargo of water resources in Oklahoma. The embargo is both violate of the Red River Compact, which preempts conflicting state laws, and is facially discriminatory against nonresidents in violation of the Commerce Clause.

21. The unconstitutional economic protectionist purpose and effect of the Moratorium is to prevent Texas citizens from acquiring water located in Oklahoma. Similarly, 82 O.S. 2001, §105.16(B), by prohibiting outright the use of surface water for periods exceeding seven years except for proposed beneficial uses "in Oklahoma," embargoes water resources for the very kinds of out-of-state uses where the water is most needed – to fulfill municipal long-term needs, fulfilled through construction projects requiring lengthy development periods.

22. Plaintiff has prepared and after commencement of this action will file applications in the OWRB for appropriations from three Oklahoma tributaries: Kiamichi River, Cache Creek, and Beaver Creek (hereafter the "Applications"). The Red River Compact expressly accords Texas an apportionment of and right to water from the Kiamichi River, and the Commerce Clause protects the Plaintiff's right to acquire water from any or all three tributaries. Plaintiff is filing this action before filing the

Applications to enable it to file, contemporaneously with the Applications, a Motion herein by which Plaintiff seeks this Court's protection from Defendants' dismissal or denial of the Applications on the basis of the challenged Anti-Export Laws -- an action which would threaten Plaintiff with irretrievable loss of invaluable priority rights, as discussed in the Motion.

23.     An applicant wishing to seriously pursue an appropriation of water before the OWRB must make substantial investments of time and money, for which Oklahoma's Anti-Export Laws stand as a continuing deterrent to most nonresidents given the uncertain outcome of an application under Oklahoma's unlawful embargo. Judicial relief is needed to instill the same standing, fair treatment and certainty into the application process for a nonresident that is now enjoyed by Oklahoma applicants for appropriations.

### Oklahoma's Anti-Export Laws Are Unconstitutionally Obstructing Plaintiff's Purchase Of Oklahoma Water Pursuant To Contract With An Oklahoma Municipality

24.     The Moratorium (82 O.S. (2006 Supp.), §1B and 74 O.S. (2006 Supp.), §1221.A) prevents Plaintiff from purchasing water in Oklahoma and transporting that water out of state, by enjoining any contract of sale or exportation and any compact or intergovernmental cooperative agreement for the exportation of water, on any terms, without the prior approval of the Oklahoma Legislature. 82 O.S. (2006 Supp.), §1085.2(2) forbids the OWRB from being a party to any contract which will convey title or use of Oklahoma water out of state, again without the prior approval of the Oklahoma Legislature. 82 O.S. 2001, §1324.10(B) additionally forbids the sale or exportation of water by a water district outside Oklahoma without the prior approval of the Oklahoma

Legislature. Plaintiff is effectively prevented by these statutes from validly contracting for the purchase of water in Oklahoma.

25. Plaintiff currently stands willing and able to negotiate for the purchase of water located in Oklahoma, and has identified public and private parties who are interested in negotiating a sale of such water to Plaintiff.

## NECESSITY OF TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

26. Under Oklahoma law, the applicant who is first in time to file an application to acquire water in Oklahoma with the OWRB is given priority over subsequently filed applications. *E.g.,* 82 O.S. 2001, §105.2 and §105.10. "The maxim 'first in time, first in right' is a fundamental feature of the common-law appropriation doctrine" codified at 82 O.S.2001, § 105.2(B). *Franco-American Charolaise, Ltd. v. Oklahoma Water Resources Bd.,* 855 P.2d 568, 580 (Okla. 1990). If an application is dismissed or denied based on the Anti-Export Laws and/or the Oklahoma AG Opinion, the applicant will be threatened with the loss of its priority over subsequent applications.

27. Oklahoma's Anti-Export Laws constitute an independent basis upon which the Applications may be denied, threatening Plaintiff with the loss of priority over subsequent applications.

28. In the last 15 years, Texas entities have attempted to acquire (through negotiation) water located in Oklahoma. In each instance one result of such activities was that applications were filed by Oklahoma entities for appropriations to secure priority for hundreds of thousands of acre feet of water, for which no beneficial use or need were

demonstrated. Although such applications were speculative, they can nevertheless persist within the OWRB's administrative system for such protracted time periods as to impair the rights of applicants having less priority. The publicity that will attend the filing of this Complaint will almost certainly spur a similar flurry of applications for the purpose of securing priority over the Plaintiff.

29. As set forth above, Plaintiff will, after commencing this action, file Applications with OWRB for an appropriation of stream water from the Kiamichi River, Cache Creek, and Beaver Creek. Under Oklahoma's embargo, implemented by its Anti-Export Laws set forth above, Defendants are required to dismiss Plaintiff's Applications on the ground that Oklahoma prohibits any nonresident's acquisition of water from Oklahoma; Defendants lack authority under Oklahoma law to determine the validity of the Anti-Export Laws challenged herein. The filing of an application after such dismissal or denial threatens the priority of Plaintiff's Application, although the only basis for this priority preference would be Defendants' reliance upon and enforcement of Oklahoma's Anti-Export Laws which violate the Red River Compact and unconstitutionally discriminate against interstate commerce. Plaintiff would thereby be threatened with irreparable harm by the loss of its priority -- even if this Court subsequently declares the Anti-Export Laws upon which Defendants relied violative of the Red River Compact and/or unconstitutional. Accordingly, Plaintiff has no adequate remedy at law short of injunctive relief forbidding the dismissal or denial of its Applications for the time period during which this Court determines the constitutional issues which OWRB lacks authority to determine itself. Plaintiff is accordingly also filing a motion for temporary

restraining order and preliminary injunction to preserve the status quo by preventing dismissal or denial of its application based on the challenged provisions of the Anti-Export Laws pending the determination by this Court of the controversy presented herein.

### COUNT I
### OKLAHOMA'S ANTI-EXPORT LAWS VIOLATE OKLAHOMA'S OBLIGATIONS UNDER THE RED RIVER COMPACT AND ARE INVALID UNDER THE SUPREMACY CLAUSE

30. The Red River Compact allocates to Texas the right to take water from certain stream segments in Oklahoma. Oklahoma's Moratorium (82 O.S. (2006 Supp.), §1B and 74 O.S. (2006 Supp.), §1221.A), and 82 O.S. 2001, §105.16(B), violate that right, and are preventing Plaintiff, a Texas state agency, from exercising its rights as a Texas citizen to appropriate mainstem water allocated to Texas.

31. The Red River Compact, approved by Congress, has the status of a federal law and the Anti-Export Laws are accordingly invalid under the Supremacy Clause.

32. Plaintiff's Applications to appropriate water constitute an exercise of rights protected by and consistent with the Red River Compact, and Oklahoma is bound by the Compact to honor such rights.

### COUNT II
### OKLAHOMA'S ANTI-EXPORT LAWS PURPOSEFULLY DISCRIMINATE AGAINST INTERSTATE COMMERCE IN WATER IN VIOLATION OF THE COMMERCE CLAUSE

33. The Oklahoma Legislature and Oklahoma Attorney General have declared the public purpose of Oklahoma is to prevent exportation of its natural water resources. Oklahoma's Anti-Export Laws must be construed and enforced consistent with that declared public policy.

34. Oklahoma's Moratoriums was adopted in response to efforts by Plaintiff and certain Texas municipal water providers to acquire water from Oklahoma and has the protectionist and unconstitutional purpose of preventing Plaintiff from obtaining water from Oklahoma.

35. Oklahoma's Anti-Export Laws facially discriminate with an economic protectionist purpose and are per se unconstitutional under the Commerce Clause of the United States Constitution.

## COUNT III
## THE EFFECT OF OKLAHOMA'S ANTI-EXPORT LAWS IS TO PLACE AN UNDUE DISCRIMINATORY BURDEN ON INTERSTATE COMMERCE IN VIOLATION OF THE COMMERCE CLAUSE

36. Aside from the discriminatory purpose of Oklahoma's Anti-Export Laws, such laws have the discriminatory effect of preventing acquisition or use by nonresidents of water in Oklahoma except where such acquisition promotes Oklahoma's local commerce (82 O.S. (2006 Supp.), §1B(C)(2)).

37. Oklahoma's Anti-Export Laws are not narrowly tailored to serve a legitimate State interest and no showing can be made of the inadequacy of nondiscriminatory alternatives.

38. The discriminatory effect of the Anti-Export Laws places an undue burden on interstate commerce in violation of the Commerce Clause of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter:

(A) a declaratory judgment (i) of the invalidity, under the Red River Compact, and the Supremacy and Commerce Clauses of the United States Constitution, of Oklahoma's Anti-Export Laws, including Attorney General Opinion No. 77-274; and (ii) that given Oklahoma's obligations under the Red River Compact and the Commerce Clause, no adverse action may be taken against Plaintiff's Applications based solely upon the fact that Plaintiff is a nonresident of Oklahoma or seeks to deliver or use the appropriated water outside of Oklahoma.

(B) a permanent injunction forbidding Defendants, the members of both the Oklahoma Water Resources Board and Water Conservation Storage Commission, from enforcing the Anti-Export Laws or abiding by Oklahoma Attorney General Opinion No. 77-274;

(C) a temporary restraining order and preliminary injunction forbidding Defendants from denying or dismissing Plaintiff's Applications referenced herein for an appropriation of water in Oklahoma, on the basis of Oklahoma's Ant-Export Laws, including Oklahoma Attorney General Opinion No. 77-274, pending this Court's determination of the merits of this controversy;

(D) costs incurred by Plaintiff in this action; and

(E) such other equitable and legal relief as the Court may find appropriate and just under the circumstances of this case.

                                      Respectfully submitted,

                                      s/Clyde A. Muchmore

                                                _____
CLYDE A. MUCHMORE, OBA #6482
HARVEY D. ELLIS, OBA #2694
L. MARK WALKER, OBA #10508

-Of the Firm-

CROWE & DUNLEVY
A Professional Corporation
20 North Broadway
Suite 1800
Oklahoma City, Oklahoma 73102-8273
(405) 235-7734
(405) 272-5211 (Facsimile)
Muchmore@crowedunlevy.com

      And

KEVIN L. PATRICK, OBA#19619
SCOTT C. MILLER

-Of the Firm-

PATRICK, MILLER & KROPF, P.C.
A Professional Corporation
730 East Durant Avenue
Suite 200
Aspen, CO 81611
(970) 920-1028
(970) 925-6847 (Facsimile)

ATTORNEYS FOR PLAINTIFF TARRANT REGIONAL WATER DISTRICT