## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

TARRANT REGIONAL WATER          )
DISTRICT, a Texas State Agency,  )
                                )
                Plaintiff,       )
                                )
vs.                             )          NO. CIV-07-0045-HE
                                )
RUDOLF JOHN HERRMANN,            )
ET AL., in their official capacities as   )
members of the Oklahoma Water    )
Resources Board and the Oklahoma  )
Water Conservation Storage        )
Commission,                      )
                                )
                Defendants.      )

## ORDER

Plaintiff, Tarrant Regional Water District, brought this suit against defendants in their official capacities as members of the Oklahoma Water Resources Board ("OWRB") and as *ex officio* members of the Oklahoma Water Conservation Storage Commission ("OWCSC"). Plaintiff asserts that certain Oklahoma laws limiting the export of water outside the state, which defendants are bound to, or at least likely to, apply to plaintiff, are preempted by the Red River Compact and violate the Commerce Clause of the United States Constitution. Plaintiff seeks a declaratory judgment that the challenged Oklahoma statutes are invalid because of the Red River Compact and the Commerce Clause and that no adverse action may be taken by defendants as to plaintiff's applications for water permits on the sole basis of plaintiff's nonresident status or the end use of the water outside of the state. Plaintiff also requests a permanent injunction prohibiting defendants from enforcing or applying the

challenged laws.[1]

Defendants have filed a motion to dismiss plaintiff's complaint on the basis of ripeness, Eleventh Amendment sovereign immunity, nonjoinder of indispensable parties, and the Younger[2] and Burford[3] abstention doctrines.  The parties have fully briefed the issues and the court has held a hearing on the motion.  The court concludes that, for the reasons discussed below, defendants' motion to dismiss should be denied.

## BACKGROUND

Plaintiff alleges that it expects to experience water shortages in the future and that it desires to address these potential shortages by obtaining water from within Oklahoma's borders by purchase or otherwise.  Plaintiff filed this lawsuit seeking declaratory and injunctive relief and then shortly thereafter filed three applications with the OWRB seeking water permits that would allow plaintiff to take a requested amount of water from the Kiamichi River, Cache Creek, and Beaver Creek to be used in Texas.

Plaintiff asserts that certain Oklahoma statutes, coupled with an opinion issued by the state's Attorney General, unconstitutionally restrict its ability to obtain water permits and to contract with Oklahoma municipalities or others.  Plaintiff points to a statutory moratorium on the sale or export of water outside of the State of Oklahoma, which is set to expire in

---

[1]*Plaintiff's complaint also requested a temporary injunction.  That issue was resolved by agreement of the parties.*

[2]*Younger v. Harris, 401 U.S. 37 (1971).*

[3]*Burford v. Sun Oil Co., 319 U.S. 315 (1943).*

2009.  The moratorium, found in 82 Okla. Stat. § 1B, provides in relevant part:

> A. ... the Legislature hereby establishes a moratorium on the sale or exportation of surface water and/or groundwater outside this state pursuant to the provisions of this section ...
>
> B. Subject to the moratorium set by subsection A of this section, no state agency, authority, board, commission, committee, department, trust or other instrumentality of this state or political subdivision thereof ... shall contract for the sale or exportation of surface water or groundwater outside the state, or sell or export surface water or groundwater outside the state without the consent of the Oklahoma Legislature specifically authorizing such sale or export of water.

74 Okla. Stat. § 1221.A states in part:

> ... the Legislature hereby establishes a moratorium on any state or tribal compact or any intergovernmental cooperative agreement, authorized pursuant to law, which is drafted in whole or in part to apportion surface water or groundwater ownership, or authorize or otherwise implement any sale or exportation of surface water or groundwater outside this state, except as authorized by the provisions of this act ...

Plaintiff also points to 82 Okla. Stat. § 105.16, which restricts issuing a permit where the whole amount of water will not be put to beneficial use within seven years and only provides an exception where it is shown that the water use will "promote the optimal beneficial use of water in the state."  It also challenges 82 Okla. Stat. § 1085.2(2), which prohibits the OWRB from entering into contracts where the result would be sale or use of Oklahoma water in another state, unless the contract is specifically authorized and approved by the Oklahoma Legislature.

Plaintiff states that 82 Okla. Stat. § 1085.22 prohibits the OWCSC from permitting

3

the sale or resale of water outside of the State of Oklahoma. It asserts that 82 Okla. Stat. § 1266(9) excludes public agencies of other states from membership in public regional water districts. It points to 82 Okla. Stat. § 1324.10(B), which forbids water districts from selling or exporting water, pursuant to the Rural Water, Sewer, Gas and Solid Waste Management Districts Act, outside of the state without the consent of the Oklahoma Legislature.

It also relies on an opinion issued by the Oklahoma Attorney General in 1978, which states that an out -of-state user of water is not a proper permit applicant before the OWRB. *See* Attorney General Opinion No. 77-274, 10 Op. Atty. Gen. Okla. 288, 1978 Okla. AG LEXIS 155 (Feb. 28, 1978).

## **DISCUSSION**

### I.     **Case or Controversy**

A lawsuit seeking declaratory relief is only justiciable in federal court when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Wilson v. Stocker, 819 F.2d 943, 946 (10th Cir. 1987) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). To determine whether a controversy exists, "courts examine the immediacy of the threat of harm to a plaintiff in light of the nature of the statute the plaintiff seeks to challenge." *Id.* "[A] plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest to a state enforcement officer sued in his representative capacity to create a substantial controversy when...the plaintiff shows an appreciable threat of injury flowing

4

directly from the statute." *Id.* at 947.

Defendants argue that no case or controversy exists as to plaintiff's preemption claim because it is possible, perhaps probable, that, after considering plaintiff's applications and the effect of the Red River Compact on them, the OWRB will not apply the Oklahoma laws at issue in making its determination.

Defendants first assert that the moratorium does not apply to the permit applications filed by plaintiff because the moratorium only applies to contracts, tribal compacts, and intergovernmental agreements and a permit is not any one of these.  This argument overlooks the language contained in § 1B(A), which states in part "the Legislature hereby establishes a moratorium on the sale *or exportation* of surface water and/or groundwater outside this state pursuant to the provisions of this section." (Emphasis added).  While issuing plaintiff its requested permits cannot be necessarily characterized as a contract, compact, or agreement, it is a necessary precondition to the exportation of water outside of the state. Defendants attempt to minimize the impact of the quoted language by underscoring that this moratorium is "pursuant to the provisions of this section" and thereby interpreting the moratorium to be limited to contracts for the sale or exportation of water as provided in § 1B(B).  This is at best a strained reading of the statutory language and does not satisfy the court that no appreciable threat of its application to plaintiff exists.

Defendants' contention that the moratorium does not apply to plaintiff because the Oklahoma Legislature gave its consent when it agreed to the Red River Compact is

unpersuasive.  There is no indication in the language of the statute that the Legislature viewed the scope of the moratorium as being limited by its earlier adoption of the Red River Compact.  Further, the Red River Compact cannot be said to constitute the "consent of the Oklahoma Legislature" referenced in § 1B(B), as that exception from the moratorium contemplates specific legislative approval of the particular contract.  Given the statutory language, there is an appreciable threat that the moratorium will be applied to plaintiff's applications.

Defendants also assert that § 105.16 will have no real impact on plaintiff's applications because it is possible for the OWRB to apply alternate statutory provisions allowing for the grant of a term permit, even if a long-term regular permit cannot be granted. Again, the court concludes that a reasonable threat of enforcement of the regular permitting scheme exists.

Despite defendants' attempts to demonstrate that the challenged Oklahoma laws are not applicable to plaintiff or that OWRB likely will not apply the challenged provisions of law, it is clear that the overall thrust of the laws challenged is to prevent Oklahoma water from being removed from the state.  Defendants have not agreed or bound themselves in any way not to apply these provisions to plaintiff.  Accordingly, defendants' motion to dismiss is denied insofar as it is based on ripeness concerns.

## II.      Eleventh Amendment

The U.S. Supreme Court in Ex parte Young, 209 U.S. 123 (1908), "held that the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself." Hill v. Kemp, 478 F.3d 1236, 1255-56 (10th Cir. 2007).  Here, defendants appear to concede that plaintiff's requested relief initially meets the standards set out in Ex parte Young, in that plaintiff has sought only declaratory and injunctive relief and has named only state officers acting in their official capacities.  Nonetheless, defendants assert that plaintiff's claims do not fall within the Ex parte Young exception to sovereign immunity and are therefore barred in federal court, because they implicate core sovereign interests of the State of Oklahoma.  Defendants rely on Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), arguing the claim in this case "affects a core sovereign interest of the State of Oklahoma and any relief granted would be just as much an intrusion on State sovereignty as would a money judgment."  See defendants' motion to dismiss, p. 12.

The concern with special sovereignty interests suggested in Coeur d'Alene has been rejected in later cases.  "[I]n determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  Hill, 478 F.3d at 1259 (quoting Verizon Maryland, Inc. v. Pub. Serv. Comm'n. of Maryland, 535 U.S. 635, 645 (2002)).  With respect to whether relief

is "properly" characterized as prospective, formal pleading titles do not necessarily control. *Id.* Federal courts "need not (and should not) linger over the question whether 'special' or other sorts of sovereign interests are at stake before analyzing the nature of the relief sought." *Id.* (recognizing that Verizon Maryland, Inc., 535 U.S. 635, abrogated the Tenth Circuit's holding in ANR Pipeline Co v. Lafaver, 150 F.3d 1178 (10th Cir. 1998), requiring federal courts to examine whether the relief sought implicates special sovereignty interests).

Defendants also assert that plaintiff's interstate commerce clause claim does not fall within the Ex parte Young exception to sovereign immunity because the named defendants lack sufficient connection to the enforcement or application of the challenged laws. They argue this lawsuit is therefore merely a disguised action against the State.

Under Ex parte Young, "[the named] state officials must have a particular duty to 'enforce' the statute in question and a demonstrated willingness to exercise that duty." Prairie Band Potawatomi Nation v. Wagon, 476 F.3d 818, 828 (10th Cir. 2007). "'The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact...'" *Id.* (quoting Ex parte Young, 209 U.S. at 157). Here, plaintiff has named the members of the OWRB and the OWCSC as defendants. These are the state officials charged with deciding whether to issue water permits, as opposed to persons — such as the governor or attorney general — having a more general duty to enforce the state's laws. *Compare* Prairie Band Potawatomi Nation, 476 F.3d 818, *with* Okpalobi v. Foster, 244 F.3d 405 (5th Cir. 2001); Children's Healthcare is a Legal Duty, Inc. v. Deters,

92 F.3d 1412 (6th Cir. 1996); 1st Westco Corp. v. School Dist. of Philadelphia, 6 F.3d 108 (3rd Cir. 1993); and Long v. Van de Kamp, 961 F.2d 151 (9th Cir. 1992). Further, as discussed above, there is an appreciable threat that defendants will apply some or all of the challenged laws in deciding plaintiff's permit applications. Given the nature of plaintiff's claims and the persons against whom they are asserted, the claims are not precluded by Eleventh Amendment immunity.

## III.   Indispensable Parties

Defendants contend that Arkansas and Louisiana, as signatories to the Red River Compact, are necessary and indispensable parties pursuant to Fed.R.Civ.P. 19. Defendants argue that these states will be affected by the court's determination in this case because the salinity of the Red River could be altered. Defendants also argue that, absent joining these states, Oklahoma will be exposed to multiple inconsistent judgments in the form of interpretations of the Red River Compact that are binding on some but not all of the signatories to the Compact.

The court concludes that Arkansas and Louisiana are not necessary or indispensable parties to this lawsuit. Plaintiff has not requested the court to appropriate water or to determine water rights under the Red River Compact or otherwise.[4] Plaintiff has merely challenged the validity of the Oklahoma laws in question. The Red River Compact is important here only as

---

[4]*Plaintiff's complaint is not altogether clear in this regard. See complaint, opening paragraph, p. 1, and para. 5 (referencing plaintiff's rights under the Red River Compact). However, plaintiff clarified at the hearing that it relies on the Red River Compact only as the expression of federal law it alleges to have preempted the challenged Oklahoma statutes.*

it impacts the validity of the challenged Oklahoma statues.  *See* <u>City of El Paso v. Reynolds</u>, 563 F.Supp. 379, 382-83 (D.N.M. 1983).  In these circumstances, there is no failure to join necessary or indispensable parties.

## IV.   Abstention

"Abstention is meant to be a rare exception to the court's 'virtually unflagging obligation' to exercise jurisdiction." <u>Winnebago Tribe of Nebraska v. Stovall</u>, 341 F.3d 1202, 1205 (10th Cir. 2003).  Here, defendants have asserted that the court should abstain from deciding this case based on <u>Younger</u> and <u>Burford</u> abstention.[5]

### A.   <u>Younger</u> Abstention

<u>Younger</u> requires a federal court to abstain from hearing a case where three criteria are met: "[1] an ongoing state judicial (or in a proper case administrative) proceeding, [2] the presence of an important state interest, and [3] an adequate opportunity to raise federal claims in the state proceedings." <u>Seneca-Cayuga Tribe of Oklahoma v. State of Oklahoma ex rel. Thompson</u>, 874 F.2d 709, 711 (10th 1989).  All three of these criteria must be met for <u>Younger</u> abstention to be warranted.  *Id.*

The cases do not provide bright line guidance in analyzing the first element in the context of this case.  However, the court concludes the administrative proceedings pending before the OWRB do not constitute the sort of judicial or quasi-judicial proceeding contemplated by the

---

[5]*Defendants' attempt, in their reply brief, to urge abstention under the <u>Pullman</u> doctrine is unpersuasive.  The court concludes that some, if not all, of the challenged laws are "not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal question." <u>Hawaii Housing Authority v. Midkiff</u>, 467 U.S. 229, 236 (1984).*

cases applying the Younger doctrine.  The Younger abstention doctrine was first articulated in situations where injunctive or similar relief seeking to restrain ongoing state criminal proceedings was sought.  The doctrine was later expanded to "non-criminal judicial proceedings where important state interests are involved."  Middlesex Co. Ethics Com. v. Garden State Bar Assoc., 457 U.S. 423, 432 (1982).  It has subsequently been expanded to certain state administrative proceedings where they are judicial in nature.  Ohio Civil Rights Comm'n. v. Dayton Christian School, Inc., 477 U.S. 619, 627 (1986); Seneca-Cayuga Tribe of Oklahoma, 874 F.2d at 711.  For purposes of Younger abstention, administrative proceedings are "judicial in nature" when they are coercive, i.e. state enforcement proceedings.  Majors v. Engelbrecht, 149 F.3d 709, 711 (7th Cir. 1998).  Here, the administrative proceedings are not akin to any sort of criminal or disciplinary enforcement.  The application process was initiated by plaintiff rather than by the administrative body.[6]  Although the presence or absence of an otherwise necessary permit is no doubt intended to restrict non-permitted behavior, the court nonetheless concludes the present process is not "coercive" in the sense used for Younger purposes.  Thus, although a close question, the court concludes the first Younger element is not present here.

Similarly, the court concludes a sufficiently important state interest, as contemplated by the Younger doctrine, is not present here so as to warrant abstention.  It is unquestionably true that Oklahoma has a substantial and important interest in regulating the use of water that flows through it.  Although that interest is not properly grounded in a concept of state ownership of

---

[6]*The timing of the administrative filing relative to the filing of this suit is of no importance, as there had been no "proceedings of substance" in this court by the time the applications were filed.* Hicks v. Miranda, *422 U.S. 332 (1975).*

the water, in a strict property law sense, its interest in managing this important resource is nonetheless a substantial interest. *See* Sporhase v. Nebraska, 458 U.S. 941, 950-1 (1982).[7] However, the nature of the interests implicated in this case is different from those often involved in state judicial or administrative proceedings. This case involves asserted rights grounded in the Commerce Clause and its protection of interstate interests. The interest of the state, though unquestionably important, is not the only or necessarily predominant interest in this context. Rather, the substantial federal interest in preventing state actions which unduly burden interstate commerce, grounded in the Commerce Clause, cuts against any suggestion that abstention doctrines should prevent access to a federal forum. Seneca-Cayuga Tribe of Oklahoma, 874 F.2d 709 (regulation of Indian tribes, grounded in the Indian Commerce Clause, was matter of predominant federal interest); Harper v. Public Service Comm'n. of West Virginia, 396 F.3d 348 (4th Cir. 2005).

Finally, the court notes at least an additional close question as to whether the pending proceedings before the OWRB give plaintiff an adequate opportunity to raise its federal claims. Certain of the statues challenged by plaintiff are not necessarily involved, at least in any direct sense, in the proceedings before the Board. Further, the Board's lack of authority to declare a legislative act unconstitutional is troublesome. Abstention is not appropriate where "state law clearly bars the interposition of constitutional claims." Moore v. Sims, 442 U.S. at 426. Here,

---

[7]*Sporhase* dealt with ground water rather than surface water. However, the court's discussion of Hudson County Water Company v. McCarter, *209 U.S. 349 (1908), and* City of Altus v. Carr, *255 F.Supp. 828 (WD Tex.), summarily affirmed 385 U.S. 35 (1966), and its overruling of* Geer v. Connecticut, *161 U.S. 519 (1896), upon which* Hudson County *was based, clearly suggest the same principles would apply to surface water.*

all parties acknowledge that the OWRB lacks the authority to declare any of the challenged statutes unconstitutional, citing <u>Dow Jones & Co. Inc. v. State ex rel. Okla. Tax Comm'n.</u>, 787 P.2d 843 (Okla. 1993).  The potential for judicial review of any administrative order likely solves the problem, *see* <u>Ohio Civil Rights Comm'n. v. Dayton Christian Schools, Inc.</u>, 477 U.S. at 629, but a substantially similar limitation on the powers of the administrative agency has given the Tenth Circuit pause in addressing the propriety of <u>Younger</u> abstention.  <u>Weitzel v. Div. of Occup. and Prof. Licensing, State of Utah</u>, 240 F.3d 871, 876 (10th Cir. 2001).  Suffice it to say that the plaintiff's ability to raise its constitutional claims in a meaningful way would at least be deferred.

Taking all these factors together in the light of the principles of comity which underlie <u>Younger</u>, the court concludes abstention on the basis of that doctrine is not warranted

## B.    <u>Burford</u> Abstention

The <u>Burford</u> abstention doctrine holds:

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

<u>New Orleans Pub. Service, Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 361 (1989) (quoting in part <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 814

(1976)).

Defendants' largely conclusory assertion of the <u>Burford</u> doctrine is unpersuasive.  The issues of state law referenced by defendants either ignore the nature of the relief sought here by plaintiff[8] or are substantially unrelated to the issues in this suit.[9]  Defendants ultimately identify no state law questions which can be said to transcend the issues in this case.[10]  Further, defendants' suggestion of disruption to Oklahoma's comprehensive water planning process is unpersuasive.  That process, at least as it relates to the moratorium and/or "embargo" here in issue, has been very leisurely, leaving the court skeptical as to whether this suit would materially affect the progress of study efforts.  Defendants provide no reasoned basis for suggesting that resolution of the issues raised here would hinder, rather than aid, Oklahoma's efforts to adopt a comprehensive water policy taking into account, among other things, applicable provisions of federal law which might impact it.  Abstention is not warranted based on the <u>Burford</u> doctrine.

---

[8]*Plaintiff's complaint challenges only whether Oklahoma's various statutory restrictions on the export or sale of water outside the state are unconstitutional under the Commerce Clause or have been pre-empted by federal law.  It does not seek the approval of any specific application for permit nor does it seek to have this court anticipate or otherwise address any other issue that might arise in the course of the OWRB proceedings.*

[9]*Defendants suggest the "totality of circumstances pertaining to water law in Oklahoma is unique and unsettled," reply brief, p. 9, apparently alluding to Oklahoma's longstanding difficulty in deciding whether water rights should be based on riparian or appropriative rights.  See <u>Helderman v. Wright</u>, 152 P.3d 855 (Okla. 2007); <u>Franco-American Charolaise Ltd. v. OWRB</u>, 855 P.2d 568 (Okla. 1993)(noting, at 572, that these rights, though theoretically irreconcilable, have coexisted for almost 100 years).  It is difficult to see how resolution of this issue (or its continued non-resolution) would impact the determination sought in this case.*

[10]As noted above in connection with <u>Younger</u> abstention, this case involves substantial issues implicating the impact of the U.S. Constitution on interstate matters.

Accordingly, the defendants' motion to dismiss plaintiff's complaint [Doc. #34] is

**DENIED**.

   **IT IS SO ORDERED**.

Dated this 29th day of October, 2007.


_____
JOE HEATON
UNITED STATES DISTRICT JUDGE