## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TARRANT REGIONAL WATER DISTRICT, a Texas State Agency, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-07-0045-HE |
| RUDOLF JOHN HERRMANN, ET AL., in their official capacities as members of the Oklahoma Water Resources Board and the Oklahoma Water Conservation Storage Commission, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Tarrant Regional Water District commenced this case in early 2007, seeking a declaratory judgment that certain Oklahoma laws unconstitutionally prevented it from appropriating or purchasing water in Oklahoma.[1]  Simultaneous with the filing of this case, plaintiff filed three applications with the Oklahoma Water Resources Board ("OWRB") for permits to appropriate surface or stream water for use in Texas.  Each application referenced different quantities of water sought to be taken from particular locations in Oklahoma.

Defendants, who are the members of the OWRB, moved to dismiss plaintiff's complaint on various grounds.  That motion was denied by this court by order entered

---

[1]*Plaintiff is a Texas agency responsible for supplying water to a substantial portion of north Texas.*

October 29, 2007 [Doc. #49].   The denial was upheld on appeal.   <u>Tarrant Reg'l Water Dist.</u> <u>v. Sevenoaks</u>, 545 F.3d 906 (10th Cir. 2008).   A scheduling order was then entered, establishing various deadlines and setting this case on the court's December, 2009, trial docket.

During its regular 2009 session, the Oklahoma Legislature adopted (and the Governor signed) H.B. 1483.   That bill amended 82 Okla. Stat. § 105.12, one of the "Anti-Export Statutes" challenged by plaintiff, and added a new section of law applicable to permits for water to be used outside the boundaries of Oklahoma.   82 Okla. Stat. § 105.12A.   Plaintiff sought, and the court granted, leave to file a supplemental complaint adding the new or changed laws to those being challenged by plaintiff.

Defendants have now filed their motion to dismiss or, in the alternative, for summary judgment [Doc. #90].   Summarized generally, defendants argue that H.B. 1483 "effectively repealed" Oklahoma's restrictions on out-of-state water sales and renders plaintiff's challenge to them moot, thus depriving the court of subject matter jurisdiction.   They also argue that, as issues involving the construction of the Red River Compact ("RRC" hereafter) may control this case, the court should defer to the Red River Compact Commission under the doctrine of primary jurisdiction and dismiss the case.   Finally, they argue that, if the controversy is not moot and the merits are reached, then the RRC constitutes an expression of federal law sufficient to preclude any challenge to H.B. 1483 or, presumably, other similar statutes, on the basis of invalidity under the Commerce Clause of the U. S. Constitution.

The issues raised by the present motion are fully briefed.   The court heard oral

argument from the parties on October 22, 2009.[2]

Factual Background

As the present motion is, in part, one for summary judgment, a reference to pertinent undisputed facts is appropriate. The submissions of the parties show the following facts to be undisputed. The RRC was entered into by the states of Oklahoma, Texas, Arkansas, and Louisiana in 1978. The compact was approved by Congress and the President in 1980. Pub. L. No. 96-564, 94 Stat. 3305 (Dec. 22, 1980). Plaintiff has filed three applications with the OWRB seeking authority to appropriate water in Oklahoma and export it to end users in north Texas. All involve water from tributaries of the Red River which is subject to the RRC.[3]  One application  (the "Kiamichi River" application) seeks to appropriate approximately 310,000 acre-feet per year from one of two points of diversion downstream from Hugo Lake, on the Kiamichi River. This location is within Reach II, Subbasin 5 as designated by the RRC. The second application (the "Cache Creek" application) seeks to appropriate 125,000 acre feet per year from one of two alternative diversion points on Cache Creek, which is located within Reach I, Subbasin 2 per the RRC. The third application (the "Beaver Creek" application) seeks to appropriate water from a diversion point also located in Reach I, Subbasin 2. Under the terms of the RRC, waters in the areas to which the

---

[2]*Defendants have since sought to supplement their summary judgment submissions with additional information about the status of plaintiff's effort to acquire water not subject to the RRC [Doc. #124], to which plaintiff has objected [Doc. #126].*

[3]*Although plaintiff initially raised technical objections to certain of defendants' asserted undisputed facts, plaintiff conceded at the hearing that all water within the scope of its three pending applications is water subject to the RRC.*

3

Kiamichi application applies are allocated equally (subject to certain limits) to the four signatory states to the compact.  Waters in the areas to which the Cache Creek and Beaver Creek applications apply are allocated solely to Oklahoma.

<u>Jurisdiction - Implied Repeal</u>

Defendants argue that H.B. 1483 impliedly repealed all provisions of Oklahoma law which potentially affect plaintiff's applications and that this case is therefore moot.  It argues that H.B. 1483 — in particular, its addition of paragraph G to 82 Okla. Stat. § 105.12 — renders inapplicable all the statutes previously challenged by plaintiff.[4]   The court is unpersuaded.

As defendants acknowledge, repeals by implication are not favored.  <u>Nat'l Ass'n. of Home Builders v. Defenders of Wildlife</u>, 551 U.S. 644, 662 (2007).  It is presumed that the legislature did not intend, by enacting a new statute, to repeal an existing statute by implication.  <u>Strong v. Lauback</u>, 89 P.3d 1066, 1070 (Okla. 2004).  A clear, unequivocal and irreconcilable conflict between the "prior" and "new" statutes must exist to warrant a conclusion that the prior statute was impliedly repealed.  <u>City of Sand Springs v. Okla. Dep't of Welfare</u>, 608 P.2d 1139, 1151 (Okla. 1980).

Here, the circumstances fall far short of those necessary to warrant a conclusion that

---

[4]*That paragraph provides: "Notwithstanding the provisions of any other law that may be deemed inconsistent with this section, the Board shall promulgate rules and apply the provisions of Section 1 of this act [the new statute — 82 Okla. Stat. § 105.12A] and subsections A, B, D, E, and F of this section to applications for use of water for which no final adjudication has been made by the Oklahoma Water Resources Board before the effective date of this act."*

all pertinent provisions of Oklahoma law have been impliedly repealed.[5]  There is, of course,

no explicit repealer in H.B. 1483.  It is plain from the text of paragraph G that the legislature

had pending applications in mind when it enacted H.B. 1483 and, judging from other

background materials submitted by plaintiffs and the circumstances in general, it is clear

enough that the pending applications involved in this case were particularly in its mind.[6]  Yet

it declined to include an explicit repealer in the legislation, rejecting earlier versions of the

bill which had done so.  Further, while the provisions of H.B. 1483 are, in some respects,

inconsistent with various provisions of Oklahoma law not explicitly repealed, at least some

are not clearly so.   Finally, even if the court was otherwise disposed to accept defendants'

assessment of H.B. 1483, it would still not make the issues in this case moot.  H.B. 1483

itself includes a requirement of approval by the Oklahoma legislature of any permit for out-

of-state, but not in-state, use of water apportioned to Oklahoma under an interstate compact.[7]

It is undisputed that a portion of the water sought by plaintiff in its permit applications is

---

[5]*One provision initially challenged by plaintiff, the outright moratorium on out-of-state water sales, has expired according to its terms.  See 82 Okla. Stat. § 1B (moratorium expired five years from effective date of the act, i.e.  November 1, 2009).*

[6]*The news clippings and statements of individual legislators submitted by plaintiff are not essential to the court's conclusions, hence it is unnecessary to belabor whether they are  evidence which might be formally considered in determining this motion.  They do at least illustrate the point which is otherwise obvious — that H.B. 1483 did not create any "clear and unequivocal" conflict with prior law.  Indeed, some of the explanations of H.B. 1483 by OWRB personnel illustrate the technique of "doing a little sidestep" made popular by the fictional Texas governor in a popular 1970's musical involving that state.*

[7]*Title 82 Okla. Stat. § 105.12A (section 1 of H.B. 1483) provides in part: "D.  No permit for the use of water out of state shall authorize use of water apportioned to the State of Oklahoma under an interstate compact unless specifically authorized by an act of the Oklahoma Legislature and thereafter as approved by it."*

water allocated to Oklahoma under the RRC.[8]  A requirement of legislative approval of an interstate water transfer, when in-state transfers are not similarly conditioned, implicates Commerce Clause concerns.   Sporhase v. Nebraska, 458 U.S. 941, 955-56 (1982).[9] Whatever the ultimate outcome of a substantive challenge to the statute might be, there is nonetheless a real question left in play by the nature of H.B. 1483's requirements and plaintiff's claims.

In any event, for multiple reasons,[10] the court concludes the passage of H.B. 1483 has not rendered this controversy moot.


Deferral to the Commission - Doctrine of Primary Jurisdiction

Defendants argue the court should dismiss or stay this case based on the doctrine of "primary jurisdiction."  They argue that some or all of the issues raised as to the RRC by plaintiff's claims can and should be presented first to the Red River Compact Commission, a body formed under the RRC, as its determination may make the current controversy go

---

[8]See undisputed facts 3-7, Def.'s Br. 4-5 [Doc. #90].  Specifically, the "Cache Creek" and "Beaver Creek" applications involve water allocated wholly to Oklahoma under the RRC.

[9]Sporhase did not conclude that a requirement of legislative approval necessarily violates the Commerce Clause.  Rather, it noted that differing requirements for in-state versus out-of-state transfers "would be inconsistent with the ideal of evenhandedness in regulation" but also acknowledged "there are legitimate reasons for the special treatment accorded to requests to transport ground water across state lines."  Id.

[10]Plaintiff argues that the complaint's reference (¶ 25) to plaintiff's interest in acquiring water by other means — i.e. water other than "compacted"  water — leaves issues for disposition even if the court accepts defendants argument that the RRC precludes a Commerce Clause violation. For reasons discussed more fully hereafter, the court has not relied on that argument in concluding H.B. 1483 does not moot the issues in this case.

away or at least inform the court's further decisions as to matters involving compact interpretation.   Defendants indicate they have posed to that body certain questions which grow out of the issues in this case.  Plaintiff objects, arguing that the doctrine of primary jurisdiction does not apply and that, in any event, deferral to the Commission is not appropriate in the present circumstances.

The doctrine of primary jurisdiction is a prudential doctrine designed to allocate decision-making authority between courts and administrative agencies.  In general, it applies where a particular issue arising under a regulatory scheme has been assigned by Congress to an administrative body, to take advantage of that body's special expertise or competence in the area.  <u>S. Utah Wilderness Alliance v. Bureau of Land Mgmt.</u>, 425 F.3d 735, 750-51 (10th Cir. 2005).  In determining the doctrine's application, courts evaluate both the  need to promote consistent application of the regulatory scheme involved and the interest in court reliance on agency expertise in resolving "issues of fact not within the conventional experience of judges."  *Id.*, citing <u>Far East Conference v. United States</u>, 342 U.S. 570, 574 (1952).

The court concludes the doctrine of primary jurisdiction does not require or warrant the dismissal or stay of this case.  The claims asserted by plaintiff here, though involving issues of compact interpretation, are not based directly on the assertion of rights under the RRC.  Moreover, the claims involve what are essentially issues of statutory construction and matters of law, rather than factual matters requiring the resolution of issues of fact "not within the conventional experience of judges."   Further, it is unclear whether the

7

Commission's authority even arguably extends to adjudicating disputes like those involved here, as its authority involves the "making of findings, recommendations, or reports" rather than determining a disputed issue. However, any question in that regard, as applicable to this dispute, is resolved by the express language of the RRC, which provides in pertinent part:

> The making of findings, recommendations, or reports by the Commission shall not be a condition precedent to the instituting or maintaining of any action or proceeding of any kind by a Signatory State in any court or tribunal, or before any agency or officer, for the protection of any right under this Compact or for the enforcement of any of its provisions . . .

RRC, Sec. 10.01(g). If a signatory party to the Compact is not required to "exhaust" this administrative process before proceeding to court, it makes no sense to suggest that a non-party should.

The court concludes the doctrine of primary jurisdiction does not warrant the dismissal or stay of this case.

<u>"Dormant" Commerce Clause Claim</u>

The principal thrust of defendants' motion is its argument that the RRC operates to preclude the Commerce Clause and Supremacy Clause claims asserted by plaintiff. The Commerce Clause, Art. I, § 8, cl. 3 of the Constitution, generally "precludes a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders . . ." <u>New England Power Co. v. New Hampshire</u>, 455 U.S. 331, 338 (1982). Water, regardless of its status as property or non-property under state law, is an "article of commerce" to which the Commerce Clause is applicable. <u>Sporhase</u>, 458 U.S. at 953. Congress therefore has the power to regulate

8

commerce in water and, where it does so, Congress' determination controls. Where Congress has not affirmatively acted to establish federal policy in an area, the Commerce Clause nonetheless constitutes an implicit restraint on state regulation. United Haulers Assoc., Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth., 550 U.S. 330, 338 (2007). However, the existence of unexercised federal power (i.e. the "dormant" aspect), coupled with the fact that water is an article of commerce, does not necessarily render state laws which address or regulate it unconstitutional. Sporhase, 458 U.S. at 954. The determination of the constitutionality of state statutes affecting interstate commerce involves consideration of, among other things, the nature and effect of the statute in issue and the relationship of the statute to the local purpose or interest involved. *See generally* Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). Plaintiff's Commerce Clause claim raises those issues with respect to the challenged Oklahoma regulatory scheme.

However, as all parties recognize, the "dormant" Commerce Clause is applicable only where Congress' power to regulate in fact lays dormant. If Congress acts to authorize a particular activity or regulation by the states, that state activity is immune from Commerce Clause attack even if it would otherwise be contrary to "dormant" Commerce Clause principles. Northeast Bancorp, Inc. v. Bd. of Gov. of Fed. Reserve Sys., 472 U.S. 159, 174 (1985) ("When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause."). Defendants argue that Congress, by its ratification of the RRC, has acted to authorize (for water subject to the compact) the sorts of limitations Oklahoma has placed on the interstate sale or transfer of

9

water.

It is, of course, undisputed that Congress has ratified the Red River Compact.  Once Congress has approved an interstate compact, the compact becomes more than just an agreement between the involved states.  It also becomes, in legal effect, a federal statute. Texas v. New Mexico, 482 U.S. 124, 128 (1987).  And, as noted above, a federal statute can supply the authorization for a state regulatory scheme that would otherwise be contrary to Commerce Clause principles.  The central question raised by defendants' motion is whether the compact involved here, the RRC, is a sufficiently clear expression of Congressional intent to do that.

As plaintiff's correctly note, the test for determining whether Congress has authorized the state regulatory scheme in issue is an exacting one.  As the Sporhase court noted: "In the instances in which we have found such consent [to otherwise impermissible burdens on commerce], Congress' 'intent and policy' to sustain state legislation from attack under the Commerce Clause was 'expressly stated.'"  458 U.S. at 960 (citing New England Power Co. v. New Hampshire, 455 U.S. at 343,  and Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 427 (1946)) (internal quotation marks omitted).  Some cases have stated the standard as being whether Congress' intent was "unmistakably clear."  South-Central Timber Dev., Inc. v. Wunnicke, 467 U.S. 82, 91 (1984).[11]  Still, the degree of specificity required is not without

_____

[11]The South Central court stated at 91: "There is no talismanic significance to the phrase 'expressly stated,'  however; it merely states one way of meeting the requirement that for a state regulation to be removed from the reach of the dormant Commerce Clause, congressional intent must be unmistakably clear."

limits.[12]  The ultimate question is one of determining congressional intent.

So far as the court can determine, no case has squarely addressed the question of whether Congress' approval of compact language like that involved here is sufficient to insulate state statutes from Commerce Clause scrutiny.  Plaintiff relies on <u>Sporhase</u>, correctly noting it is the Supreme Court case which dealt most closely with issues like those involved here.  But <u>Sporhase</u>, though it's language provides some support for plaintiff's position, did not involve the same circumstances as are present here.   <u>Sporhase</u> involved a Commerce Clause challenge to a Nebraska statute which had the effect of limiting the exportation of ground water to certain neighboring states.[13]  Nebraska argued that Congress' intent to defer to state water laws as to ground water was shown by a variety of federal statutes and two interstate water compacts.   The Supreme Court rejected the argument, concluding the language in the various statutes addressing federal projects and the compacts did not evidence an intent to remove constitutional constraints on the pertinent state laws:[14]

_____

[12]*For example, in the <u>Prudential Ins. Co.</u> case, supra, the question was whether Congress, by passing the McCarran Act, intended to insulate from Commerce Clause scrutiny a South Carolina tax statute which imposed a gross receipts tax on insurers organized out of state, but not on in-state insurers.  The McCarran Act included language stating state regulation and taxation of insurers was in the public interest, and that its silence should not be interpreted as a barrier to that regulation or taxation, but there was no reference to "discriminatory" tax schemes or the like, as opposed to taxation generally .*

[13]*The Nebraska statute required a permit to withdraw ground water for transportation to another state.  It also prohibited the issuance of a permit in circumstances  where the laws of the transferee state did not reciprocally permit transfer of water from that state to Nebraska.  <u>Sporhase</u>, 458 U.S. at 944.   The transferee state involved, Colorado, did not grant reciprocal rights to Nebraska.*

[14]*A typical statute provided that "nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the*

"Neither the fact that Congress has chosen not to create a federal water law to govern water rights involved in federal projects, nor the fact that Congress has been willing to let the States settle their differences over water rights through mutual agreement, constitutes persuasive evidence that Congress consented to the unilateral imposition of unreasonable burdens on commerce."   *Id.* at 960.   However, the interstate water compacts relied on by Nebraska addressed surface water, rather than ground water, and were directed at showing some broad federal deferral to state water laws in general.   Here, the circumstances are at least one step removed from those existing in <u>Sporhase</u>.   The particular compact involved here (the RRC) is directly applicable to the water in issue and it specifically contemplates dividing the water — allocating it — between the states involved.

But just as <u>Sporhase</u> does not provide a definitive answer to the question posed here, neither does the principal authority offered by defendants.   They rely on <u>Intake Water Co. v. Yellowstone River Compact Comm'n</u>, 769 F.2d 568 (9th Cir. 1985), where the court concluded Congress' adoption of the interstate water compact involved there avoided a Commerce Clause challenge to a restriction on diversion of water outside the Yellowstone River Basin without the unanimous consent of all signatory states.   But the difference is that the restrictive provision which arguably violated the Commerce Clause was not included in the statutes of one of the signatory states, <u>but was included in the compact itself</u>.   The court therefore concluded that, as the arguably offending provision was part of the federal law

---

*control, appropriation, use, or distribution of water used in irrigation."*   <u>*Sporhase*</u>*, 458 U.S. at 959.*

itself (as part of a congressionally approved compact), it could not be the basis for a dormant Commerce Clause claim.  Here, of course, the challenged restrictions are not in the RRC, but rather are creatures of state statute.

In the absence of controlling authority, the court concludes the most appropriate guide to determining the scope and nature of Congress' intent is to focus on the nature of an interstate compact, the language Congress used (i.e. the language of the RRC which it ratified) and the logical import of that language.  The language of the RRC does not explicitly say "states can limit or stop the out-of-state shipment of water" nor does it make any explicit reference to the Commerce Clause, dormant or otherwise.  But the court does not read the various cases to require that level of specificity.  What the RRC <u>does</u> specifically state is that it is intended to remove cause for controversies between the signatory states by "governing the use, control and distribution of the interstate water . . ."  RRC, Sec. 1.01(a). It is intended to "provide an equitable apportionment" of the water of the Red River between the various states and to provide a basis for state or joint action by "ascertaining and identifying each state's share" in the water.  RRC, Sec. 1.01(b) and (e).  Each signatory state "may use the water allocated to it by this Compact in any manner deemed beneficial by that state."  RRC, Sec. 2.01.  A state's "failure . . . to use any portion of the water allocated to it shall not constitute relinquishment or forfeiture of the right to such use."  RRC, Sec. 2.04. Various provisions provide, with respect to waters allocated to Oklahoma or other states, that the pertinent state "shall have free and unrestricted use" of the water allocated to it.  *E.g.* RRC, Sec. 4.02(b) (Oklahoma) and 4.03(b) (Texas).  Further, the compact states that nothing

13

in it "shall interfere or impair the right or power of any Signatory State to regulate within its boundaries the appropriation, use, <u>and control</u> of water . . . not inconsistent with its obligations under this Compact." RRC, Sec. 2.10 (emphasis added).

While the question is close, the court concludes the plain import of these provisions is to effect an allocation or division of the waters covered by the compact and that the essence of that process — allocating some portion of the resource in issue to a particular state or its citizens —  is inherently inconsistent with the standards that would <u>otherwise</u> apply based on dormant Commerce Clause analysis.  Those standards are  ordinarily directed to preventing protectionist state measures designed to secure an economic or other advantage for the state or its citizens — that is, to avoiding giving the residents of one state "a preferred right of access, over out-of-state consumers, to natural resources located within its borders . . ."  <u>New England Power Co. v. New Hampshire</u>, 455 U.S. at 338-39 ("The [challenged order] is precisely the sort of protectionist regulation that the Commerce Clause declares off-limits to the states. . . . Such state-imposed burdens cannot be squared with the Commerce Clause when they serve only to advance 'simple economic protectionism.'") (citing <u>Philadelphia v. New Jersey</u>, 437 U.S. 617, 624 (1978)).   The principal purpose and effect of the RRC, however, through its provisions for allocation and apportionment of the Red River's waters between the various states, is to do precisely that.  As one commentator has noted, in  discussing <u>Sporhase</u> and interstate compacts:

> <u>Economic protection is the very purpose of the compact</u>.  The split of unappropriated water is intended to free the states from the need to race for the water under the usually applied (though recently questioned) rule of <u>Wyoming</u>

v. Colorado: "priority is equity" between two states that apply the law of prior appropriation internally, and the same law will fix their shares in an equitable apportionment.  A compact halts the race.[15]

As a result, the approval of the RRC by Congress <u>necessarily</u> constituted its consent to a legal scheme different from that which would otherwise survive Commerce Clause scrutiny. Moreover, the Oklahoma statutes which plaintiff challenges here — whether wise or not — are not inconsistent with the RRC insofar as they relate to the waters allocated and apportioned to Oklahoma under the compact.  Further, in light of the right of Oklahoma to control compact waters within its borders not inconsistent with the compact and in the absence of a showing that a particular statute is <u>necessarily</u> inconsistent with the compact,[16] the court concludes, for purposes of the current facial challenge, that the superseding effect (over otherwise applicable Commerce Clause standards) extends to all water covered by the compact, whether apportioned wholly or partially to Oklahoma.

So far as the court can determine, none of the many cases concluding Congress' intent to supplant the Commerce Clause was insufficiently clear or insufficiently expressed involved circumstances where the essence of what Congress <u>did</u> do was to <u>allocate</u> resources between states.  For example, both <u>Wyoming v. Oklahoma</u>, 502 U.S. 437 (1992) and <u>New</u>

---

[15]*Frank J. Trelease, <u>State Water and State Lines: Commerce in Water Resources,</u>, 56 U. Colo. L. Rev. 347, 349 (1985) (emphasis added).*

[16]*An effort by the State of Texas (or another signatory state) to acquire water allocated to it by the compact, if thwarted by one or more of the challenged statutes, might well give rise to a claim under the compact in favor of that state.  But that is not the circumstance presented here. Plaintiff, though a political subdivision of the State of Texas, is not Texas and is not entitled to assert in this proceeding rights which Texas has under the RRC.*

England Power, *supra*, conclude the Federal Power Act did not constitute or include a congressional determination to supplant the Commerce Clause standards, but there was no suggestion in either case that the FPA was intended to allocate resources between particular states. Similarly, in South Central Timber, *supra*, national policy as to federal land use was held not to imply approval of parallel state restrictions, but no issue of allocation between the states — of timber or otherwise — was involved. While a more comprehensive and exhaustive review of the cases might conceivably identify a circumstance paralleling the explicit "allocating" or "apportioning" action of Congress involved here, neither the submissions of the parties nor the court's own research have revealed such a case. The circumstances in Sporhase are as close an any appear to get but do not, for the reasons noted above, control the result here.

Accordingly, the court concludes that Congress' approval of the RRC constitutes an adoption of standards that preclude a successful Commerce Clause claim in the circumstances existing here, where the water sought via permit or otherwise is within the scope of the RRC. Congress has approved a compact the essential nature of which is to allocate and divide resources.

Supremacy Clause Claim

Plaintiff has also asserted a supremacy clause claim, asserting Oklahoma's statutory scheme is inconsistent with the RRC and hence preempted by federal law. State laws can be preempted in two general ways. If Congress manifests an intent to occupy a given field, any state law falling within that field is preempted. If Congress has not fully displaced state

regulation over the particular subject matter, state law is preempted to the extent it actually conflicts with federal law so as to render compliance with both impossible.  <u>California Coastal Com'n. v. Granite Rock Co.</u>, 480 U.S. 572, 581 (1987).  There is, of course, no suggestion here that Congress has generally preempted the field of water law, involving interstate streams or otherwise.  Further, there is no necessary conflict between the federal law here in question — the RRC — and the state laws plaintiff challenges.   The compact itself explicitly states it is not intended to supplant any state legislation if it is otherwise consistent with the compact.  RRC, Sec. 2.10(a).  In light of the foregoing discussion as to Congress' intent in the context of a Commerce Clause claim, the court can discern no basis upon which the RRC could be a basis for preemption, at least in the context of any claim which plaintiff has standing to pursue.

Water Not Subject to RRC as Basis for Claim

Plaintiff has also suggested that, even if the court accepted defendants' position as to the effect of the RRC, it should nonetheless permit the challenge to the various statutes to go forward due to plaintiff's interest in acquiring water not subject to the RRC.  Plaintiff relies on paragraph 25 of its complaint, which states:

> 25.  Plaintiff currently stands willing and able to negotiate for the purchase of water located in Oklahoma, and has identified public and private parties who are interested in negotiating a sale of such water to Plaintiff.

The court concludes, however, that in light of the disposition made here of plaintiff's claims involving water subject to the RRC, any potential claim arising out of plaintiff's interest in non-compacted water is, at this point, too speculative and uncertain to be ripe for resolution.

17

The court previously rejected a ripeness challenge to plaintiff's claims (Order, October 29, 2007, pp. 4-6) [Doc. #49], concluding there was a real and substantial threat of enforcement of the various state statutes as to plaintiff's pending applications.  However, as noted above, those applications relate purely to water subject to the RRC and are therefore within the scope of the court's determination of the pending motion.  Insofar as the pleadings reflect, there are no applications pending before the OWRB as to water <u>not</u> subject to the RRC. Further, the allegations upon which plaintiff relies in this respect do not suggest plaintiff has actually contracted for non-compacted water — only that it is willing and able to do so.  It does not allege there are persons willing to sell water to plaintiff — only that it has identified private parties willing to negotiate about it.   And of course, other aspects of the "other" water, such as whether it is ground water, stream water subject to a different compact, or otherwise, are likewise unidentified.   In these circumstances, the court concludes plaintiff's allegations are insufficient to show a non-speculative basis for concluding that an immediate, appreciable threat of injury to it flows from the challenged statutes.  *See* <u>Wilson v. Stocker</u>, 819 F.2d 943, 947 (10th Cir. 1987).  Therefore, as a case or controversy sufficient to support federal jurisdiction does not presently exist as to any remaining claims not otherwise disposed of by this order, they must be dismissed for lack of jurisdiction.

<u>Summary</u>

In accordance with the foregoing, the court concludes defendant's motion should be granted in substantial part.   Defendants' mootness and primary jurisdiction arguments are unpersuasive.  However, the fact that the water to which plaintiff seeks access is governed

by the Red River Compact is sufficient, in the circumstances existing here, to preclude the Commerce Clause and Supremacy Clause claims that plaintiff asserts.

Given the nature of this case, it is perhaps appropriate to note the court's view of what this decision does <u>not</u> do.  It does not purport to address a potential Commerce Clause claim, by plaintiff or others, to the extent it pursues rights in, or approvals as to, water not subject to the Red River Compact.  It does not purport to address in some hypothetical way questions which might arise under <u>other</u> compacts to which Oklahoma is a party, as the court's review has been limited to the Red River Compact.  It does not anticipate or address the possibility of a claim by Texas or other signatory state <u>under</u> the compact, based on a claimed compact violation.  That is a circumstance different from the claim presented here.  Finally, there is nothing in this order which precludes Oklahoma — if the facts on the ground are roughly as plaintiff has alleged — from negotiating, as a good neighbor, some arrangement to use more effectively the water allocated to it under the Red River Compact.  The alleged facts suggest Oklahoma has ample room to maneuver in that regard, without harming either its long term or short term interests.

Based on the foregoing, defendants' motion to dismiss and/or for summary judgment [Doc. #90] is **GRANTED IN PART** and **DENIED IN PART**.  It is denied insofar as it seeks dismissal of this case on the grounds of mootness due to recent legislation or based on any need to defer to the Red River Commission, under the doctrine of primary jurisdiction or otherwise.  It is granted insofar as it seeks summary judgment as to plaintiff's Commerce Clause and Supremacy Clause claims.  Any claim premised on plaintiff's efforts to acquire

water not subject to the Red River Compact is dismissed on the basis of ripeness, without prejudice.  As to the latter claim, plaintiff is granted leave to file within **thirty (30) days** an amended complaint addressing the deficiencies noted, if it can do so.  Defendant's motion to supplement the record as to that subject matter [Doc. #124] is **DENIED**.

In light of the disposition effected by this order, the trial setting and existing scheduling order are **STRICKEN**.  The joint motion of the parties for a pretrial conference [Doc. #122] is **STRICKEN** as **MOOT**.  In light of this disposition, the pending motion to intervene of the Apache Tribe of Oklahoma [Doc. #111] is also **STRICKEN** as **MOOT**.[17]

**IT IS SO ORDERED**.

Dated this 18th day of November, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[17]*The court would not be disposed to grant the motion in any event.  Apart from questions of timeliness, the motion misconceives the nature of plaintiff's claims here.  Plaintiff does not seek to appropriate or apportion water by this lawsuit; rather, it seeks a determination of the constitutionality of the Oklahoma's regulatory scheme.  As a result, the disposition of this case will not impair, impede, or otherwise affect  whatever water rights the Apache Tribe may have or assert.*

20