# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TARRANT REGIONAL WATER DISTRICT, a Texas State Agency, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-07-0045-HE |
| RUDOLF JOHN HERRMANN, ET AL., in their official capacities as members of the Oklahoma Water Resources Board and the Oklahoma Water Conservation Storage Commission, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Plaintiff Tarrant Regional Water District commenced this action in 2007 seeking a declaratory judgment that various Oklahoma laws unconstitutionally prevented it from appropriating or purchasing water in Oklahoma. The principal thrust of plaintiff's case at that time was on its efforts to acquire surface or stream water from various locations, which were identified in three permit applications plaintiff filed with the Oklahoma Water Resources Board ("OWRB"). All the waters within the scope of those applications were subject to the Red River Compact. Based on the impact of that status as "compacted" water, the court rejected plaintiff's Commerce Clause and Supremacy Clause challenges to the various Oklahoma statutes and granted defendants' motion to dismiss or for summary judgment.[1] Order, Nov. 18, 2009 [Doc. No. 134]. However, the court also granted leave to

---

[1]*Defendants are the members of the OWRB.*

plaintiff to amend its complaint to assert claims based on water not subject to the Red River Compact, if it could do so. Plaintiff has now done so and defendants have again moved to dismiss, arguing that a justiciable controversy does not exist and that the amended complaint fails to state a claim. Also pending is plaintiff's motion to further amend its complaint, seeking to add allegations as to plaintiff's rights to assert Texas' rights under the Red River Compact.

Plaintiff's amended complaint alleges two sets of circumstances upon which its further claims are based. First, it alleges plaintiff has entered into an agreement with certain private owners of water rights in Stephens County, Oklahoma, pursuant to which plaintiff has acquired a 10-year option to purchase the groundwater under a 12-acre tract. (Compl. Ex. 1.) Second, the complaint alleges plaintiff has entered into a memorandum of understanding ("MOU") with the Apache Tribe of Oklahoma, pursuant to which the parties agreed to "work cooperatively to further quantify the Apache Tribe's reserved water rights and to develop mutually agreed terms for the use of certain amounts of such water by TRWD by either purchase or long term lease." (Compl. Ex. 2.) Although for different reasons, the court concludes neither set of allegations is sufficient to make out a "case or controversy" sufficient to confer jurisdiction on the court.

**Stephens County Water Claims**

Article III standing is limited to those who allege, among other things, that they have suffered or imminently will suffer an injury. Morgan v. McCotter, v. 365 F.3d 882, 888

(10th Cir. 2004). Plaintiff alleges that the challenged laws unconstitutionally obstruct its ability to acquire and utilize the Stephens County groundwater to which its option applies. Defendants argue that the statutes plaintiff point to do not apply to ground water at all or are inapplicable for other reasons and that, as a result, there is no prospect of injury to plaintiff from them.[2] The court concludes defendants' position in this regard is well taken and that the challenged laws do not, on their face, obstruct plaintiff from successfully appropriating the water subject to its option.[3]

Title 82 of the Oklahoma statutes, which governs "Water and Water Rights," includes separate provisions for, among other things, "Stream Water Use" (82 Okla. Stat. §§ 105.1–105.33) and groundwater, i.e., the "Oklahoma Groundwater Law" (82 Okla. Stat. §§ 1020.1–1020.22). Several of the challenged statutes — namely, 82 Okla. Stat. §§ 105.12, 105.12A, and 105.16(B) — apply only to stream water and thus do not stand as an obstacle to plaintiff's acquisition of groundwater. Title 74 Okla. Stat. § 1221.A, which imposed a moratorium on the creation of intergovernmental state or tribal water compacts or transfers pursuant to them, has, like the § 1B moratorium discussed above, expired according to its

---

[2]*Defendants concede, appropriately, that the moratorium on the export of Oklahoma water imposed by 82 Okla. Stat. § 1B would constitute an impediment to plaintiff's plan if it were still in place. (Defendants' position as to the moratorium has not always been a model of consistency.) However, the court previously concluded (Order, Nov. 18, 2009) that the moratorium had expired according to its terms.*

[3]*The challenged statutes are identified in paragraph 23 of the Amended Complaint [Doc. No. 135].*

terms.[4] Title 82 Okla Stat. § 1085.22 prohibits the sale of water in storage reservoirs to out-of-state users, circumstances not present here. Title 82 Okla. Stat. § 1266(9) defines entities qualified to be "public agencies" for purposes of the Interlocal Cooperation Act, 74 Okla. Stat. § 1003, and excludes agencies of other states from the definition, but there is nothing in the amended complaint suggesting plaintiff seeks or needs that status. Title 82 Okla. Stat. § 1324.10(B) prohibits (absent consent of the Legislature) the export of water by Rural Water, Sewer, Gas, and Solid Waste Districts, but there is no allegation that plaintiff seeks water from such a district. Finally, plaintiff argues that a 1978 Oklahoma Attorney General Opinion, No. 22-274, construing 82 Okla. Stat. § 1085.2(2), concludes the OWRB should not consider an out-of-state entity to be a proper applicant and that it suggests some general policy against such applicants.[5] Whatever may have been the validity and scope of the opinion in 1978, the court concludes the opinion has been supplanted, at least as to the portions pertinent here, by intervening changes in the law. Title 82 Okla. Stat. § 105.12 now clearly contemplates applications by out-of-state users.[6]

---

[4]*Sections 1B and 1221.A include essentially identical terms for expiration: "the moratorium shall be in effect for a five-year period beginning on the effective date of this act or until such time as the State of Oklahoma conducts and completes a comprehensive scientific hydrological study of the water resources of this state."*

[5]*Plaintiff's amended complaint characterizes the opinion as "concluding that Oklahoma law would not countenance an appropriation of water located in Oklahoma by an out-of-state user," citing a portion of the opinion which states: "Considering these factors together, we consider the proposition unrealistic that an out-of-state user is a proper permit applicant before the Oklahoma Water Resources Board." (Pl.'s Am. Compl. ¶ 22 [Doc. No. 135].)*

[6]*Subsection (5) of § 105.12 provides: "If the application is for use of water out of state, the Board shall, in addition to the criteria set forth in this subsection, also evaluate whether the water that is the subject of the application could feasibly be transferred to alleviate water shortages in the*

While it is of course impossible to know with certainty how the Board will interpret and apply these or other statutes when and if an application is presented to it, the mere possibility of some future injury to plaintiff is not enough to confer standing in these circumstances, as "a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, *as opposed to a mere possibility, or even probability,* of future injury." Morgan, 365 F.3d at 888. The statutes on their face raise no special obstacles to plaintiff's yet-to-be-filed permit application for the export of groundwater. Consequently, the court concludes plaintiff has failed to allege an injury in fact sufficient to meet the standing requirements of Article III.[7]

## Tribal Water Claims

Plaintiff's claims based on the MOU with the Apache Tribe raise somewhat different issues. As alleged in the amended complaint, the tribal water rights which plaintiff seeks to acquire involve both surface water and ground water.[8] It alleges surface waters owned by tribal entities like the Apache Tribe are, for various reasons, not governed by the Red River Compact and are hence outside the scope of the court's November 18, 2009 order. For present purposes, it is unnecessary address the legal merits of those allegations, as the court

---

*State of Oklahoma."*

[7]*The court, like the parties, has focused on standing and the jurisdictional prerequisites to suit. However, defendants' motion to dismiss also references Fed. R. Civ. P. 12(b)(6). To the extent plaintiff challenges the various statutes as they relate to the Stephens County groundwater, the amended complaint fails, for substantially the same reasons as discussed above, to state a claim.*

[8]*The MOU does not specify the type of water, but instead makes general reference to "reserved water rights."*

concludes plaintiff's claims based on its understanding with the Apache Tribe are not ripe for judicial resolution.

"To fall within [a federal court's] subject-matter jurisdiction, a case must raise issues that are ripe." Coal. for Sustain Res. v. United States Forest Serv., 259 F.3d 1244, 1249 (10th Cir. 2001). The ripeness doctrine is "a confused mix of principle and pragmatic judgment reflecting its mixture of article III case and controversy requirements with prudential restraints on the exercise of jurisdiction." *Id.*; Reno v. Catholic Soc. Serv., 509 U.S. 43, 58 n.18 (1993). The doctrine is "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 807 (2003); Morgan, 365 F.3d at 890. "In evaluating ripeness, the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated or indeed may not occur at all." Walker v. Utah Wildlife Fed'n, 450 F.3d 1082, 1098 (10th Cir. 2006). In determining whether a case is ripe for review, courts consider (1) "the *fitness* of the issue for judicial resolution" and (2) "the *hardship* to the parties of withholding judicial consideration." Skull Valley Band of Goshute Indians v. Nielson, 376 F.3d 1223, 1237 (10th Cir. 2004) (emphasis in original).

Here, the court concludes the arrangement with the Apache Tribe is so fraught with uncertainties and contingencies that it does not provide the necessary basis for a justiciable claim. As a threshold matter, the parties have not reached anything approaching an enforceable agreement such as would give plaintiff the right to utilize whatever water rights

6

the Tribe has. The parties' agreement is labeled a "memorandum of understanding" and expresses only a willingness to agree upon terms some time in the future. The reason for that lack of specificity is fairly obvious, however, as the parties' submissions make clear a bigger problem — it is very much an open question whether the Tribe has any water rights at all which are pertinent to plaintiff's needs and, if so, what those rights are. It is no doubt true, as plaintiff argues, that Indian tribes have reserved rights in water in some circumstances, by treaty or otherwise. But recognizing that general principle or possibility does not mean that the Apache Tribe has such rights and any meaningful answer to that question is likely to be the result of major and separate litigation all by itself.[9] And even if, at some point, the Apache Tribe is able to establish that it in fact has reserved water rights as a general matter, its obligation to pursue any further arrangement with plaintiff is made expressly contingent on the "quantification" of those rights.[10]

The result is that plaintiff is, for present purposes, claiming prospective injury based on the assumption that the Apache Tribe has reserved water rights of some sort, that those rights can be determined and quantified, that the Tribe will ultimately elect to sell some portion of those quantified rights to plaintiff on a mutually acceptable basis, and that, when and if the Tribe does so and plaintiff pursues an application based on those rights, defendants

---

[9]*Recognizing (among other things) the substantial and different collateral issues that would necessarily have to be resolved, the court declined to allow intervention by the Apache Tribe in this case. Order, Apr. 30, 2010 [Doc. No. 178].*

[10]*The extent of the contingencies and collateral issues also suggests that the relative hardship to plaintiff from withholding a legal determination of some sort at this juncture is relatively slight.*

7

will then apply Oklahoma's statutory scheme in an unconstitutional fashion. The court concludes such a scenario is far too speculative and subject to too many contingencies to set out a controversy ripe for judicial resolution.[11]

## Conclusion

For the reasons stated above, defendants' motion to dismiss [Doc. No. 142] is **GRANTED**. Judgment will be entered in favor of defendants.

Plaintiff's motion for leave to amend its complaint [Doc. No. 161] to add certain allegations regarding Texas's authorization of plaintiff to acquire water apportioned to Texas under the Red River Compact is **GRANTED** and the amended complaint is deemed amended per the motion. However, as the court's prior determination of the various constitutional questions was not grounded wholly, or even principally, on a question of standing, neither the court's prior determination nor this one are affected by the addition.

**IT IS SO ORDERED**.

Dated this 16th day of July, 2010.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[11]*The court recognizes, as noted by plaintiff, that it is not necessary for every possible contingency to be resolved for a case to be ripe. See generally* Roe No. 2 v. Ogden, *253 F.3d 1225, 1232 (10th Cir. 2001). But here, there are so many contingencies that any decision by the court would be tantamount to an advisory opinion. See* Morgan, *365 F.3d at 882.*

8